Case No. 24-1488 from the Southern District of Iowa, United States v. Isaac Loggins, Jr. and Case No. 24-1569 from the Northern District of Iowa, United States v. Barton Crandall. Good morning, may it please the Court. My name is David O'Neill and I represent Mr. Barton Crandall and Mr. Isaac Loggins, Jr. Mr. Crandall is now 61 years old. He has been in prison since 1989. Mr. Loggins is nearly 50 years old and has served more than two decades in prison. Had these men been sentenced under today's laws, they would both have been released from prison years ago. The Sentencing Commission, acting under its express delegated authority, amended Section 1B1.13b6 of the Guidelines to give District Courts the discretion to consider these circumstances in combination with other individualized factors as an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. 3582c1a. The District Courts incorrectly held that prior Eighth Circuit precedent prevented them from considering Section B6. This Court should reverse and remand for three reasons. First, the District Courts were required to abide by the policy statement. Congress explicitly delegated... Wait a minute. Talk about an open question. Don't just state that as given law. Well, that's my argument. Well, all right, but you started out like you're summarizing the facts. Well, no, these are the arguments, the three reasons we believe that the District Courts should... But that is a very open issue. We may or may not need to reach it. Well, I think it is one the Court should reach because... Well, not if we're controlled by Crandall. Well, and I submit that the Court is not controlled by Crandall for several reasons. That I know is an argument. It's not a slam dunk. Well, so let's address that. First, Crandall was writing in the absence of direction from the body that Congress specifically delegated authority to decide this question. So Crandall was considering the statute... But Crandall, right, Crandall was interpreting the statute, which supersedes anything that the commission can do. Crandall was interpreting broad terms in the statute, the words extraordinary and compelling, which are inherently ambiguous. So Crandall determined that the best reading in the absence of direction from the Sentencing Commission was that those words, extraordinary and compelling, were read to not permit consideration. Is there anywhere in Crandall where we suggest that extraordinary and compelling is ambiguous? Your Honor, if the wide range of judicial opinions on this issue... So the answer is no. Then you can move on. The answer is that no. Crandall did not explicitly say that. Crandall also had no reason to anticipate and rule on the validity of an amendment that did not become, was not formulated, much less become effective at the time. So Crandall was required to, because the Sentencing Commission did not have a quorum, Crandall was required to review those terms and decide what it concluded was the best reading in the absence of that direction. But to continue the point I was making, there are a huge range of judicial opinions on this topic. There was a circuit split, a 5-4 circuit split, before the Sentencing Commission acted. There remains a circuit split now. If that shows anything, it is that there is more than one reasonable interpretation of the terms extraordinary and compelling in this statute. And if those terms are ambiguous, then the body that Congress expressly charged with the responsibility to interpret those words, that interpretation, as long as it is not manifestly contrary to the statute, is binding on the courts. So, Counsel, doesn't it really come down to whether or not the Commission exceeded its delegated authority? That is the ultimate question. And we believe that the Sentencing Commission acted squarely within its delegated authority. Again, it was interpreting the words extraordinary and compelling. There is no limitation in any statute that would prohibit the Sentencing Commission from acting in the way that it did. And I would also point out that the Sentencing Commission reached a middle ground between the two poles of the circuit split. On the one hand, it was facing decisions from courts that said you can never take into account non-retroactive statutory changes. On the other hand, it had circuit precedents that said you could always take into account non-retroactive changes. The Sentencing Commission did its job. It ran a process. It heard from many stakeholders. And it reached a middle ground. It said there are circumstances in which you can take into account non-retroactive statutory changes in the law, but only in these very specific circumstances. You had to have served 10 years of your sentence. It has to be likely that a different sentence would be imposed today, and there has to be a gross disparity between the sentence that was imposed at the time and the sentence that would be imposed today. And that was not the, you know, that was not what was advocated to the Sentencing Commission by a number of bodies. So you don't see a conflict between the prospective nature of the statute and the sometimes retroactive nature of the guidelines? I think the Fourth Circuit hit the nail on the head in saying that there is no inconsistency between, on the one hand, Congress saying not every defendant is entitled to relief automatically, but that doesn't mean that no defendant is entitled to relief. Congress was addressing a separate question in the prospective application. The question there was should every defendant, as Congress did in Section 404 of the First Step Act, should every defendant be entitled automatically to resentencing? Congress said no. The same Congress created a new mechanism in the First Step Act for defendants to seek compassionate release under Section B6 in a way that had previously been reserved only to the Bureau of Prisons. And so it is entirely consistent with the decision that Congress made in Section 403 that in certain circumstances that presented an especially compelling case that the defendant would be able to make a case for an individualized fact-specific reduction in sentence on these grounds. And obviously I have more to say in rebuttal in response to the government's arguments, but I would note that every one of the government's arguments, every one of their statutory arguments, rests on a reading or an inference from congressional silence. From congressional what? Congressional silence, Your Honor. Silence? Silence, that's correct.  They are inferring a limitation on the Sentencing Commission's authority based on inferences from other statutes. Nothing explicit. And the Supreme Court in their ---- Well, I think to which the extent to which agencies should just fill in congressional, quote, silence the way they feel like it is a burning issue of the day far beyond this case. I understand, Your Honor, but I do want to point ---- It's front and center here. But I want to point out that in Loper Wright, the ---- I'm not invoking, we're not talking Chevron. We're talking a broader principle than that. The Supreme Court has made clear that the decisions in which it addressed express delegations by Congress are unaffected by ---- I know we're not talking about Chevron, but it is relevant. And I want to be clear that the elimination of Chevron deference does not affect this case because here, as in Brandeis, there is an express delegation of authority to this commission. And the question, therefore, is, is what the commission did manifestly contrary to the statute? It is not manifestly contrary to the statute. I think it is ---- But Crandall disagrees with you. Crandall says it's directly contrary to the statute. And therefore, what gives the commission the authority to say something different? Again, I think Crandall is best read as trying to infer what the court had to conclude was the best reading of the statute. That is a different question from whether it is the only reading of the statute. I grant you, if Crandall had said, these words are explicit, they are capable of only one possible meaning and it's the one we adopt, I would argue then that Crandall is wrong. But I would argue ---- I think you can argue Crandall is wrong, but I don't see how you get around it. I mean, it says the anti-stacking provisions, Congress specifically made non-retroactive, and therefore compelling reasons can't work. And now the commission says just the opposite. Well, it's not just the opposite because what the ---- Well, okay, maybe it's more subtle. Under certain circumstances it can't work. But Crandall says never. Crandall said never. But, again, Crandall has to be read in the context in which it was decided. Well, it has to be read by what it says. This panel, the Corning Bank, of course, can read it. I understand and I do not believe that Crandall forecloses what the Sentencing Commission did. And the reason is that there are two separate and distinct questions. Crandall is addressing the question, what do these statutory words mean without guidance from the expert body that Congress directed to give it meaning? Because that body couldn't act, didn't have a quorum. That's the question that Crandall had to ask, to answer. It reviewed those statutory terms and it said, we believe this is the best answer to this question. The Commission, before its time out, lengthy time out, had answered many of these questions. Consistent with Crandall. The Commission actually had only provided guidance for motions that could be filed by the Bureau of Prisons. And the issue was that between then and the Court's consideration in Crandall, Congress, in the First Step Act, allowed defendants to file motions for the first time. Right. And many courts concluded that the BOP-focused guidance did not apply. And so Crandall was deciding in the absence of guidance. It did not have guidance. And it therefore determined this is the appropriate reading of the statute. Again. We had a lot of First Step Act cases inconsistent with what the new Commission has done. Well, the Court has addressed this issue on a couple of occasions. It has concluded that, in the opinion you wrote, Your Honor, that Concepcion, the decision kept Concepcion, did not change the outcome in Crandall. What does change the outcome in Crandall, or what fundamentally changes the landscape, is that the Sentencing Commission, again, acting pursuant to its expressly delegated authority, the Sentencing Commission determined that this is how these words should be interpreted. Congress said, Commission, you need to describe what extraordinary and compelling circumstances are. Again, whether this Court agrees or disagrees with the decision that the Commission made, Congress made the Commission the decider of that question. The Commission can change its view in the future. But just because Crandall interpreted those words first does not mean that those are final, that its decision is final and for all time. That's the implication of the Supreme Court's decision in Brandeis. And again, I would emphasize to the Court the many, many judicial opinions by peers on other courts of appeals, the Fourth Circuit, many others. Even the Fifth Circuit, which had held the same way that Crandall did, and subsequently in United States v. Jean, concluded that the Sentencing Commission's action was valid and a reasonable middle ground, to quote that court, notwithstanding previous circuit precedent that had gone the same way as Crandall. All of those judicial opinions, they are all well-reasoned, they are all sound, they are good-faith efforts to interpret the same ambiguous statutory terms, and those courts came to the opposite. You need to put the mic closer to you. Those courts came to the same conclusion that the Sentencing Commission did, which are that extraordinary and compelling can include some consideration in limited circumstances of non-retroactive changes in the law. What that shows is that those statutory terms are ambiguous enough that they can encompass more than one possible reading. The Sentencing Commission made the choice, and it's a choice that Congress wanted the Commission to make. They made the choice that that was the reading that they were going to adopt. And I would submit that Crandall did not remove from the Sentencing Commission the authority to make that choice. How do we know Congress wanted the same outcome as what the Sentencing Commission did? Congress wanted the Sentencing Commission to make the choice, was my point. I wasn't saying that. I mean, I will note that the Sentencing Commission's work was submitted to Congress for review, and Congress did not countermand it. I will reserve the remainder of my time for rebuttal. Thank you.  Ms. Tyler Lee? May it please the Court, Tyler Lee for the United States. In Section 3582C1A, Congress limited the Sentencing Commission's authority to identify qualifying reasons for a sentence reduction by the clear directive that any such reasons be both extraordinary and compelling. As this Court recognized in its 2022 decision in Crandall, non-retroactive changes in sentencing law are neither of those things. To the contrary, it's the ordinary practice in federal sentencing law to apply new penalties only to defendants who have not yet been sentenced, particularly whereas here the changes that the defendants are invoking are ones that Congress has expressly declined to make retroactive. Subsection B6 of the Commission's policy statement therefore contravenes the statute's plaintext and exceeds the Commission's authority, whether under this Court's authoritative construction in Crandall or as a matter of first principles. Counsel, I think it's a little more complicated than that because in 944T, Congress expressly delegated authority to the Commission to interpret the terms extraordinary and compelling. Was the authority that Congress delegated to the Commission the authority to develop advisory interpretations or an interpretation that is binding on the federal courts? So in 994T, Congress delegated authority to the Commission to describe what may be considered extraordinary and compelling reasons. It didn't give the Commission authority to define those terms contrary to their ordinary meaning. And so it's still this Court's role to police the boundaries of that statutory delegation. The Commission cannot propagate an interpretation that is contrary to the plain terms of the statute. It cannot describe reasons that are not extraordinary and compelling. We think that changes in law are neither extraordinary nor compelling as this Court has already found in Crandall. So policy statements of the Commission are not binding on this Court if we think that their words are not consistent with the plain meaning of the ordinary use of a particular term? That's correct, Your Honor. And that's consistent with the Supreme Court's decisions in Labonte and Neal and with this Court's decision in Coons. All of those cases invalidated Commission interpretations of a statute because the Commission's interpretation was contrary to the plain meaning of the statute. And it goes back to, was it White that the Supreme Court dealt with the binding effect of policy statements? I'm not familiar with that case, Your Honor. No, it was application notes where they said, yeah, usually you need to give them the deference that you give to a reg, but it wasn't quite categorical, and now it's at issue again. Well, the Supreme Court explained in the Despierre case that it's never decided what deference, if any, is owed to the Commission's interpretation of a federal statute. The question of the Commission's deference to the Commission's interpretation of its own regulations, that's a separate question. Here we're talking about deference to the Commission's interpretation of a statute passed by Congress. But this Court does – Well, the application note has to be a fair interpretation of the guideline, just like the guideline has to be a fair interpretation of the statute. So they're not analytically unrelated. They're different. That's correct, Your Honor. And here, again, our position is that the Commission's interpretation is an unreasonable interpretation of the statutory term extraordinary and compelling. Counsel, does it make any difference that also in Section 944, Congress developed a mechanism for approval of guidelines developed by the Commission? It's a negative approval process. The Commission submits the guidelines, and in this case, the policy statement. Once they were promulgated by the Commission, they were submitted to Congress, and after a certain amount of time, if Congress doesn't modify or disapprove them, they're considered approved. Why is that not congressional approval? So, Your Honor, Congress's inaction on the amendments in this case allowing them to pass, that doesn't indicate that Congress has acquiesced or approved of the Commission's view. In Dapier, again, the Supreme Court rejected the claim that Congress's failure to reject an amendment means that it's adopted that interpretation. And in Kimbrough v. United States, the Supreme Court said that courts should resist reading congressional intent into congressional inaction. And, again, going back to those cases I mentioned before, that in Labonte and Coons, where the courts invalidated guideline provisions as contrary to the statute, those were guideline provisions that Congress had allowed to pass. And yet, in Labonte and in Coons, the Supreme Court said, no, those are unreasonable interpretations, regardless of the fact that they had passed through Congress. So we're free to ignore the guidelines and policies of the Commission if we think they're not a reasonable interpretation? Correct, Your Honor. But I want to turn back to Crandall because we think that Crandall resolves this case, because Crandall unambiguously construed the meaning of extraordinary and compelling and said that changes in law may not qualify. Crandall observed that a change in criminal penalties is not extraordinary as an empirical matter. And even if it were, it's not a compelling reason to reduce a sentence because the 2018 Congress in changing 924C's penalties did not disapprove of the previous penalties set by the previous Congress. The Court's interpretation of those terms is consistent with sentencing law's background principles of finality and non-retroactivity. This Court also made clear in Crandall that a change in law cannot be considered whether alone or in combination with other factors. In other words, it's a legally impermissible ground. And so the Commission's attempt to combine consideration of a change in law with other factors is still not permissible under Crandall. The defendants here have suggested that Section 3582C1A is ambiguous, but that's incorrect for several reasons. First, the defendants have relied on statements from the Third and Sixth Circuits suggesting that the phrase is ambiguous. But both of those courts have subsequently clarified that that's not the case. So the Third Circuit in Rutherford explained that extraordinary and compelling is not at all ambiguous as applied to the context of a non-retroactive change in law. And in the en banc decision in McCall in the Sixth Circuit, which engaged in a thorough textual analysis of the phrase extraordinary and compelling, the Court there said that non-retroactive changes in law are not extraordinary and, quote, there is no such ambiguity in the statute. And defendants have suggested that Crandall did not explicitly say that the statute was unambiguous, but we submit the Court did not need to do that. And, in fact, the Third Circuit, again, going back to this Rutherford case, even mentioned in that case that a court does not have to explicitly say the statute is unambiguous every time it construes a statute's clear meaning. Resolving this case under the prior precedent in Crandall would also resolve this issue in a way that's consistent with the Third and the Seventh Circuits. Excuse me. In the original decision in Crandall back in 2022, this Court agreed with and relied on the Third and Seventh Circuit decisions in Andrews and Thacker, which had likewise held that changes in law cannot be extraordinary and compelling reasons. Both of those courts have now taken up that question again in light of the amended policy statement and have held consistent with those prior precedents that the First Step Act's changes to 924C cannot be extraordinary and compelling reasons for a sentence reduction. Those are the 28J letters that we filed in this case. The decisions are Rutherford and Black. So this Court should reach the same result and it would be consistent with the results of those other circuits. And I actually also want to address the Fifth Circuit's jurisprudence on this case because the defendants pointed to the decision in Jeanne. But it's incorrect to rely on that decision because after Jeanne was decided, the Fifth Circuit issued another decision. Again, this is a 28J letter that we filed about United States v. Austin. And in that case, the Fifth Circuit explained that Jeanne was wrongly decided because it declined to adhere to the rule of orderliness and disregarded older Fifth Circuit precedent. And so Austin held that Jeanne was wrongly decided. And further, Austin held that changes in law are not extraordinary and compelling reasons and thus the Commission's interpretation in B6 is contrary to the statute. But even if Crandall did not control this case, as a matter of first principles, the plain text context and purpose of the statute all confirm Congress's intent to preclude reliance on change in law. So an intervening change in law is neither extraordinary nor compelling under the ordinary meaning of those terms. And this Court has recognized in a case called United States v. Honkin, which is cited in the defendant's brief, that the ordinary meaning of the term extraordinary excludes that which is ordinary. So something that's ordinary has to be more than ordinary. It has to go beyond what is usual, regular, common, or customary. And the defendant's lawfully imposed sentence is just that. At the time he was sentenced, it simply reflects that law. It's an ordinary thing. And the Supreme Court explained in Dorsey that it's the ordinary practice in federal sentencing law to apply changes to those criminal penalties only prospectively. I also want to address the point raised by defendants about congressional silence. We are not relying on congressional silence for our arguments in this case. Congress was not silent when it said that any reasons for a sentence reduction must be extraordinary and compelling. That is a plain textual limit on what may qualify under the statute. Congress was also not silent when it enacted Section 994A. And Section 994A explains that the Commission's policy statements, like the one here, must be consistent with all pertinent provisions of federal statutes. And that runs into the non-retroactivity problem here with respect to 924C. Because in changing 924C's penalties in the First Step Act, Congress expressly declined to make those changes retroactive. The Commission now attempts to give retroactive effect to those changes by allowing them as consideration for a sentence reduction, and we think that is not permissible. Because even if it's on a case-by-case basis, the Commission cannot make exceptions to Congress's categorical judgment of making those changes non-retroactive. If this Court has no further questions, we would ask that you affirm the judgment of the District Court in these cases. Very good. Thank you. Thank you. Rebuttal? Thank you. So let's talk about Crandall, because obviously – Well, you're out of time, so I'll give you 30 seconds. Well, I reserved three minutes. You ran out of time. Your reservation is not binding. The time is binding. I understand. May I make a few points? I said start over. He gets 30 seconds from now. Okay. Crandall's analysis, if you look at it, is essentially there are courts on one side of the split, there are courts on the other side of the split. We agree with the courts on this side of the split. It did not engage with 994T, which says, for example, there is one limitation on the Sentencing Commission's authority. Rehabilitation alone shall not be a consideration. That is the one limit Congress placed. Any other limits that the government tries to read into that provision are, as I said, reading into silence. May I make one other point, Your Honor? One point. All right. The Fifth Circuit situation is a great example of the ambiguity that's going on here. As counsel noted, there are two competing decisions, both on the same circuit, John and Austin, and they read the statute in totally different ways. The Fifth Circuit has denied en banc on that. I cannot think of a better indication that the words are capable of more than one reading than that kind of intra-circuit disagreement. Thank you, Your Honor. Thank you. Well, I certainly agree with the final comment that we're in the middle of a great debate, and, of course, we have to decide these cases, and they have been well argued. The two sides of the debate have been framed before us before, but we're even more clearly framed this morning, and we will sit down and struggle with it, and we appreciate your help with good briefs and arguments.